1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ernesto Azada Mangat,<br><br>                                        Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>                                        Defendant. | Case No.:  15cv2312 AJB RBB<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO AUGMENT THE RECORD [ECF NOS. 16, 19]; REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NOS. 15, 18] AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 20]** |

        On October 15, 2015, Plaintiff Ernesto Azada Mangat commenced this action against Defendant Carolyn W. Colvin, the Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for social security benefits. (Compl. 1,[1] ECF No. 1.)  On January 19, 2016, Defendant filed an Answer and the Administrative Record [ECF Nos. 10, 11].  Before the Court are Plaintiff's Motion for

---

[1] With the exception of the Administrative Record, all citations are to the page numbers assigned by the Court's Electronic Case Filing System.

1

Summary Judgment [ECF Nos. 15, 18[2]], Plaintiff's Motion to Augment the Record [ECF Nos. 16, 19[3]], and Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion to Augment the Record [ECF No. 20].  The Court has taken the motions under submission without oral argument [ECF No. 29].  For the following reasons, Plaintiff's Motion to Augment the Record is **DENIED**.  The Court recommends that Plaintiff's Motion for Summary Judgment be **GRANTED**, Defendant's Cross-Motion for Summary Judgment be **DENIED**, and the case be **REMANDED** for an award of benefits.

## I.   BACKGROUND

On January 29, 2009, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging disability since December 10, 2008.  (Admin. R. 139-45,[4] ECF No. 11.)  On November 10, 2010, Mangat testified at the hearing before Administrative Law Judge (ALJ) Larry Parker.  (Id. at 38-39.)  ALJ Parker denied the claim for benefits in a decision issued on November 17, 2010.  (Id. at 15-31.)  Mangat requested that the Appeals Council reconsider the ALJ's decision and submitted additional medical records in support of the request.  (See id. at 9, 226-29, 494-511.)  On September 6, 2011, the Appeals Council upheld the ALJ's decision.  (Id. at 5-10.)  On November 4, 2011, Plaintiff challenged the Commissioner's decision in the district court.  See Mangat v. Astrue, Civ. No. 11-cv-2579-GPC-BGS (S.D. Cal. filed Nov. 4, 2011).  On April 4, 2013, the Court granted Mangat's Motion for Summary Judgment, denied Defendant's Motion for Summary Judgment, and remanded the case to evaluate additional medical evidence.  (See Admin. R. 651-67, ECF No. 11).

---

[2] Plaintiff first filed his Motion for Summary Judgment without a supporting memorandum of points and authorities [ECF No. 15].  Plaintiff later resubmitted the motion with the supporting brief [ECF No. 18].
[3] Plaintiff's Motion to Augment the Record [ECF No. 15] did not include the memorandum of points and authorities.  Plaintiff later resubmitted the motion with the supporting brief [ECF No. 19].
[4] The administrative record is filed on the Court's docket as multiple attachments.  The Court will cite to the administrative record using the page references contained on the original document rather than the page numbers designated by the Court's CM/ECF system.

While his appeal was pending, Mangat filed subsequent applications for disability insurance benefits on June 21, 2010, and for supplemental security income on December 14, 2010.[5] (Id. at 670.)  He had a hearing before ALJ Peter Valentino on May 24, 2012.[6] (Id. at 677.)  On July 24, 2012, ALJ Valentino issued a favorable decision, awarding disability benefits as of March 10, 2011.[7] (Id.)  The ALJ found that Mangat suffered from uncontrolled diabetes mellitus, chronic renal failure, polyarthritis, congestive heart failure, and coronary artery disease.  (Id. at 679.)  Judge Valentino also determined that Plaintiff had the residual functional capacity to sit, stand, or walk for less than two hours in an eight-hour workday, and to lift less than ten pounds.  (Id.)  The ALJ accepted Mangat's testimony about his condition:

> The claimant credibly testified that he is unable to work due to pain in his chest as well as swelling in his feet and elbows.  He takes nitroglycerin at night for chest pain.  He is also diabetic for which he takes insulin, has heart disease and high blood pressure.  He has trouble sleeping because the pain in his chest wakes him up.  Thus, he is tired during the waking hours and must lie down the entire day.  The claimant further testified that fatigue and shortness of breath prevent him from working.

(Id. at 680.)

Judge Valentino gave controlling weight to the medical opinions of Plaintiff's treating doctors, primary care provider Dr. Bautista-Sacamay and cardiologist Dr. Scharf. (Id.)  The ALJ noted that on March 10, 2011, Dr. Sacamay reported that "claimant had uncontrolled diabetes, chronic renal failure, polyarthriticular gouty arthritis, coronary artery disease status post bypass surgery in 2009, and a history of congestive heart failure, hypertension and hyperlipidemia."  (Id.)  Dr. Sacamay observed that Mangat "experienced fatigue, joint swelling and joint pain" and stated that "his prognosis was

---

[5] These applications are not part of the administrative record before the Court.
[6] The transcript of May 24, 2012 hearing is not part of the record before the Court.
[7] After the hearing, but before the decision was issued, Plaintiff amended the alleged onset date of disability to March 10, 2011.  (See Admin. R. 677, 809, ECF No. 11.)

guarded." (Id.)  The treating physician limited Plaintiff to less than two hours of sitting, standing, or walking during an eight-hour workday.  (Id.)  She also opined that Mangat would need to shift positions at will, take unscheduled breaks, and elevate his feet for two or three hours during the workday.  (Id.)  Dr. Sacamay stated that Plaintiff could not bend or twist; was unable to carry more than ten pounds; and could not use his hands to grasp, turn, or twist objects.  (Id.)  The ALJ found that Dr. Sacamay's opinion was entitled to controlling weight:

> Pursuant to C.F.R. § 404.1527 and 416.927, the undersigned assigns considerable weight to this opinion, as it is well-supported by the medical evidence, including the claimant's medical history and clinical and objective signs and findings as well as treatment notes, which provides a reasonable basis for claimant's chronic symptoms and resulting limitations.  Moreover, this opinion is not inconsistent with other substantial evidence of record.  In addition, the physician is a treating source, who has seen the claimant on a regular basis and is best able to provide a detailed, longitudinal picture of the claimant's impairment and resulting limitations.  The undersigned gives this opinion controlling weight.

(Id.)

The ALJ also assigned great weight to the opinion of Dr. Scharf, Mangat's treating cardiologist, who diagnosed Plaintiff with coronary artery disease and "felt that the claimant was incapable of even a low stress job and described the claimant's condition as very severe."  (Id.)  Judge Valentino explained that medical evidence in the record, such as Mangat's assessment at Paradise Valley Hospital in April 2011, supported the treating doctors' conclusions.  (Id.)  Mangat was admitted to the hospital for a coronary catheterization; the hospital record indicated "episodes of dizziness, coronary artery disease status post coronary artery bypass surgery and status post recent stenting of the right contrary artery graft; diabetes mellitus, dyslipidemia and chronic renal insufficiency."  (Id.)  Following the procedure, his joints were "swollen more than usual with fever and pain."  He underwent another catheterization in May 2011.  (Id. at 681.)

The impartial medical expert believed that Mangat was capable of light exertional work, but Judge Valentino gave that opinion little weight, reasoning that it was not supported by the medical evidence in the record and "contrary to the opinions of the claimant's treating physicians who because of their history with the claimant, are better able to assess the overall condition and functional capabilities." (Id.)  After reviewing all the evidence, on July 24, 2012 the ALJ issued a decision finding Mangat had been disabled since March 10, 2011.  (Id. at 682.)

While Mangat's 2010 applications for benefits were pending, the denial of Plaintiff's 2009 application was reversed by the court in Mangat v. Astrue, Case No. 11cv2579-GPC (BGS), and the case was remanded to the Appeals Council in order to consider the additional medical records from Dr. Sacamay.  (Admin. R. 651-67, ECF No. 11).  The Appeals Council noted that a favorable decision was issued by ALJ Valentino on Mangat's subsequent 2010 applications, finding Plaintiff disabled as of March 10, 2011.  (Id. at 670.)  On July 23, 2013, the Appeals Council affirmed that decision and remanded the case for further administrative proceedings for the period prior to March 10, 2011.  (Id.)

On September 2, 2014, Mangat appeared with his attorney at a hearing before ALJ Valentino.  (Id. at 515, 589.)  Dr. Minh D. Vu, an impartial medical expert, appeared telephonically at the hearing.  (Id. at 589.)  The ALJ had a brief conversation with the expert before inviting Plaintiff into the hearing room:

> ALJ:  And I decided that based upon the amended onset date, which is March 10, 2011, I was able to [award benefits as of] March 10, 2011.  So now the Appeals Council says, "Okay.  The issue is what is his disability from 2008 to March 10, 2011?"  And I'm not going to tell you what the reports show, but I think if you look at these reports dated from 2008 to 3/10/11, it's going to be hard to find severe impairments.  At any event, that's going to be the issue.  What is his disability from 2008 to March 10, '11?  Now, I'm going to ask the attorneys why they amended onset date of

March 10, 2011, and now they changed their mind.[8]  They want to go back to 2008.  So I'm just – I just want to narrow the issue and let you know that that's the only period of time involved, March 10, 2008 to March 10, '11.  So if you would, please, you know, just comment on what the reports showed during that period of time, that would be very helpful.

      ME:  Okay, thank you.

      ALJ:  Okay, let's call them in now.

(Id. at 589-90.)  Judge Valentino asked Plaintiff's attorney to point to specific evidence in the record during the relevant time period.  (Id. at 591-92.)  Counsel referenced exhibit 1F showing an abnormal EKG on December 9, 2008.  (Id. at 592; see id. at 309.)  The medical expert could not find the exhibit, and counsel noted that some of the medical records attached to the first application were missing:

      ATTY:  Well, it's in the other file.  The administration has it; they just didn't put it in here.

      ALJ:  No, we have many reports during this period of time, counsel.  Not only the EKG.  There's evidence that he's been seen for other problems.

      ME:  I don't have any EKG at 1F, your honor.

(Id. at 595.)  Throughout the hearing it became apparent that relevant medical evidence was not in the file before the judge or the medical expert:

      ATTY:  Well, your honor, I – I'm – I have to say the evidence in the record is not all the evidence in this record.

_____

8 The transcript of the May 24, 2012 hearing is not in the record before this Court; however, in a letter to the ALJ dated June 26, 2012, Plaintiff's counsel referred to the ALJ asking Mangat at the hearing if he would agree to amend the onset date to March 10, 2011, the date of Dr. Sacamay's residual functional capacity report.  (See Admin. R. at 809, ECF No. 11.)  Plaintiff's counsel wrote:

    I agreed only for the purpose of the subsequent application . . . .  As the basis of the District Court action was the Commissioner's failure to consider Dr. Sacamay's March 10, 2011 medical source statement and assess Mangat's excess pain, Mr. Mangat has agreed to amend his onset date for all purposes to March 10, 2011 upon the agreement that a fully favorable determination would be issued as of that date.

(Id.)

ALJ:  Well, I'm sorry.  Then you have an obligation to present what's not in the record, counsel.

ATTY:  We sent it to the administration and I can produce all of the submissions.  However, the evidence that I'm relying upon is evidence that was in the exhibit file of that – the administration produced.  So I know that the administration has it.  That being said, the record – I will find the EKG for you.

ALJ:  I have 25 exhibits here.  You mean that these reports from 1F to 25F doesn't define the claimant's impairments for a three-year period?

ATTY:  I don't believe it does, and here's why.  5F was [Samahan] Medical.  That evidence showed the gouty arthritis, the swelling in his left elbow, peripheral neuropathy, swelling in his hands and feet, decreased sensation, and high uric acid levels.  That –

ME:  5F?

ALJ:  5F, 6/12/09, 5F.

ME:  Mine is [INAUDIBLE] I don't have gout inside.

(Id. at 598-99.)  The ALJ tried to question the medical expert regarding the record before him:

Q  And doctor, have you reviewed these reports from 1F to 25F?

A  I have, your honor.

Q  All right.  Please –

A  I have 26F.

Q  26F.  Please tell me what those records show for the period of question here, which was December 10, 2008, to March 10, '12.

A  I don't have anything in the time frame that you told me.  I have [INAUDIBLE] in December 2008 and May 2011.  I don't think anything – 42, I did not receive.

7

(Id. at 600.)  Counsel argued that the file did not include the records from the June 21, 2010 application: "[T]hose are medical records that should've been associated with this file as they pertain to his disability before March 1st, 2011." (Id. at 603.)  The expert opined that there was no evidence prior to March 2011 to show severe impairments that meet or equal the listings, and that Mangat had a full range of light exertional capacity prior to March 2011.  (Id. at 605-06.)  Counsel inquired whether the expert's conclusion would change if there was other evidence available:

> Q  If I were to present to you that on November 25th, 2009, that Mr. Mangat had a three-way bypass due to showings that his artery was 99 percent blocked, would that change your opinion?
>
> A  I don't see that.  Could you point to me exactly what exhibit.
>
> Q  If I were to present that to you.
>
> A  I don't work on "ifs."  Show me exhibits and I'll –
>
> Q  So as I –
>
> A  -- have an answer for that.
>
> Q  As I understand your testimony, you just don't have enough evidence to offer any greater limitations.  However, if there was missing evidence, would your opinion be different or could it possibly be different?
>
> A  I think, you know, this exercise is about not here and is not for me to handle as an ME.

(Id. at 606-07.)  Plaintiff's counsel eventually asked Judge Valentino for a supplemental hearing to present the additional evidence.  (Id. at 607.)  The ALJ allowed Mangat the opportunity to submit a post-hearing brief with missing medical records.  (Id. at 608.)

On July 30, 2015, a supplemental hearing before ALJ Valentino was held.  (Id. at 535.)  Prior to the hearing, Dr. Vu completed a three-page medical questionnaire.  (Id. at 515-16; 1310-12.)  The expert did not personally examine Mangat or previously serve as a medical expert for him.  (Id. at 1310.)  The expert listed coronary artery disease, renal

insufficiency, arthralgia from gout and degenerative joint disease, diabetes mellitus, and hypertension as major medically determinable impairments during the relevant period. (Id.)  Dr. Vu also stated that these impairments, either combined or separately, did not meet or equal any listing for cardiac, renal, or articular impairments.  (Id. at 1311.)

At the supplemental hearing, Plaintiff's challenged Dr. Vu's conclusion that Mangat had a good recovery after his November 2009 bypass surgery.  (Id. at 543.)

Q  Okay.  Now, in the coronary artery disease you indicate that he had a good recovery.  Are you aware that he's had two other stentings after the first three way bypass?

A  Number one, what is it – I never heard three way bypass, what did you mean by that?

Q  He had a three way bypass in –

A  Let me –

Q  -- November of 2009.

A  -- ask you what you mean by that because  --  as you pointing about the three vessels are hooked together or – I don't understand the term.

Q  Okay.  I think he had three vessels bypassed, is that correct?

CLMT:  Yes.

ATTY:  That's correct.

ME:  Not three way, okay.

Q  Did you –

A  And then tell me exactly when he had subsequent stenting –

Q  He –

A  -- point out the date.

Q  It was November – well the first was November – mid-November 2009.

CLMT:  Nine.

Q  The second was August of 2010.  He was – he had – he was re-stented in a few spots, and I'm not sure.  Then in March of 2011 he was re-stented again.

A.  Okay.  Beginning by March 2011, point me the exhibit?

Q  Beginning in March of 2011?

A  Yeah.  Talk about the stenting at that time.

Q  Okay.

A.  What actually is supporting that statement?

Q  Okay.  Let me pull the exhibits all up.  Okay.  Well, now the – well, were you aware of his stenting in March of 2011?

A  I didn't find it.  Point to me the exhibit.  I saw a study in here, but I don't see the stenting.

(Id. at 543-45.)  Because of the expert's answers, Plaintiff's counsel became concerned that Dr. Vu did not have the exhibits for the relevant time period.  (Id. at 546, 548-49.)  In response, the medical expert challenged the attorney:

A  And this is the wrong citation, and I think you made it up.

Q  What?

A  There's no – you made up that citation.  There's no stenting on this date.

Q  Well –

A  I don't think it's really normal practice to make things that doesn't happen in the file.

ATTY:  You were stented, were you not?

CLMT:  I did.

ME:  No. counselor –

ATTY:  He was stented.

ME:  -- I look at the date and I don't see anything –

ATTY:  Okay.

ME:  -- that you talk about.

Q  So –

A  Then – because you miss the stent report.  Or, you intentionally give the untrue statement.

(Id. at 553.)  The ALJ inquired if counsel could specifically refer the expert to the evidence of subsequent stenting, and Plaintiff's attorney explained:

ATTY:  I did not see the actual surgical report.  If I were to obtain it, I will send it to you.  But I've ordered the records from all these facilities.  We've gotten thousands of pages on this case, and I think we have to take a little bit of inference in there.  But, in the event that Dr. Vu is unwilling to do that, then I will try to find –

ALJ:  Well, he –

ATTY:  -- that piece of paper.  But I have Mr. Mangat here who has indicated that he was stented at that time.  I have a report saying 99 percent occlusion.  So, with that I think that – in this non-adversarial proceeding, I think that we need to review the evidence in the most favorable light to the claimant.

(Id. at 554-55.)  Eventually, the medical expert acknowledged that his conclusion would change if Plaintiff did in fact require the subsequent surgical procedures:

Q  So -- well my question is let's presume that he did get the stenting in 2000 – August, 2010, and then he did get it again in March – May of 2011.  Beginning – and he had the original one in November, 2009.  Let's pretend

1  that those operations occurred as Mr. Mangat testifies.  Would that change
2  your response at all?

3     A  Oh, yes.

4  (Id. at 563.)  Nonetheless, the expert remained convinced that Mangat's impairments did

5  not meet or equal a listing and that Plaintiff was capable of the full range of light work.

6  (Id. at 576-77.)  At the conclusion of the hearing, the ALJ stated to the Plaintiff and his

7  counsel:

8     ALJ:  All right.  Thank you.  Thank you, counsel.  I have another case I have
9     to commence a hearing on.  And Ernesto, you're getting benefits now,
10    correct?

11    CLMT:  Yes, sir.

12    ALJ:  Don't you worry about your benefits, I'm not going to interfere with
13    them.

14    CLMT:  Okay.

15    ALJ:  We're just talking about an earlier period.
16
17    CLMT:  Okay.

18    ALJ:  And your attorney's doing a good job trying –
19
20    CLMT:  Okay.

21    ALJ: -- to get you more money –

22    CLMT:  Thank you, your honor.

23    ALJ: -- if she can.  So, now counsel please be – I know you're cooperative
24    and you're a very fine attorney.  But if you're going to come up with
25    additional material, let's keep it very clear for my medical expert to
      comment on, and my [sic] also.  And the issue is whether or not you –
26    there's additional evidence of additional stenting.  Right?

27    ATTY:  Okay.  Well, he seemed to be concerned that the stenting did not
28    occur.  So, I thought what he wanted was the actual operative reports.

ALJ:  Yeah, well find those.

(Id. at 584-85.)

On August 17, 2015, Plaintiff's counsel transmitted additional evidence to the ALJ.  (See Pl.'s Mot. Augment Attach. #1 Mem. P. & A. 1-2, ECF No. 19.)  The Administrative Record reflects that a five-page letter brief was received.  (Admin. R. at 839-43, ECF No. 11.)  Plaintiff has also submitted evidence that the medical records accompanying the brief were received by Judge Valentino.  (See Pl.'s Mot. Augment Attach. #1, at 1, ECF No. 16 (identifying the receipt of 8,557 kB of data).)  Then, on August 25, 2015, ALJ Valentino issued an unfavorable decision.  (Id. at 515-27.)

## II.    STANDARD OF REVIEW

Sections 405(g) and 421(d) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C.A. §§ 405(g), 421(d) (West 2011).  The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'"  Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)).

"Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Sandqathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions.  Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  When the evidence is inconclusive, "'questions of credibility and resolution of conflicts in the

13

testimony are functions solely of the Secretary.'" <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982) (quoting <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

The ALJ has a duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991). Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel. <u>Dixon v. Heckler</u>, 811 F.2d 506, 510 (10th Cir. 1987) (quoting <u>Heckler v. Campbell</u>, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring).

The district court may affirm, modify, or reverse the Commissioner's decision. <u>Id.</u> The court should affirm the decision unless "it is based upon legal error or is not supported by substantial evidence." <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1999)). A district court may remand a Social Security disability decision under sentence four of 42 U.S.C. § 405(g). <u>Hoa Hong Van v. Barnhart</u>, 483 F.3d 600, 605 (9th Cir. 2007). That provision states, "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g). "A remand under sentence four is 'essentially a determination that the agency erred in some respect in reaching a decision to deny benefits[]' . . . ." <u>Hoa Hong Van v. Barnhart</u>, 483 F.3d at 605 (quoting <u>Akopyan v. Barnhart</u>, 296 F.3d 852, 854 (9th Cir. 2002)).

After a case is remanded and an additional hearing is held, the Commissioner may modify or affirm the original findings of fact or the decision. 42 U.S.C.A. § 405(g). A remand to the Commissioner for further proceedings or to award benefits is within the court's discretion. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). "'If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply

delay receipt of benefits, reversal [and an award of benefits] is appropriate.'" Id. (alteration in original) (quoting Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)). As a matter of administrative law, "the proper course, except in rare circumstances, is to remand to an administrative agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (citation omitted) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Legal Standard

To qualify for disability benefits under the Social Security Act, an applicant must show two things:  (1) He or she suffers from a medically determinable impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West 2011). An applicant must meet both requirements to be classified as "disabled."  Id.

The Commissioner makes this assessment by a five-step analysis outlined in 20 C.F.R. § 404.1520 (West 2012).  See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps).  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b).  Second, the Commissioner determines whether the claimant has a "severe impairment or combination of impairments" that significantly limits the claimant's physical or mental ability to do basic work activities.  If not, the claimant is not disabled.  Id. § 404.1520(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded.  Id. § 404.1520(d).  Fourth, if the impairment meets or equals one of the listed impairments, the Commission determines whether the claimant can do his past relevant work.  If the claimant can do his past work, benefits are denied.  Id. § 404.1520(e).  If the claimant cannot perform her past relevant work, the burden

shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  Id. § 404.1520(f).  If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, benefits are denied.

**B.     Plaintiff's Motion to Augment the Record**

Plaintiff filed a Motion to Augment the Record [ECF No. 19], arguing that the record before the Court is incomplete absent supplementation.  (Pl.'s Mot. Augment Attach. #1 Mem. P. & A. 2-3, ECF No. 19.)  Mangat argues that after the July 30, 2015 supplemental hearing before ALJ Valentino, counsel electronically transmitted a letter brief that referenced attached medical documentation to the ALJ.  (Id. at 2.)  The Administrative Record indicates that only a five-page letter brief was received.  (Id.; see also Admin. R. 839-43, ECF No. 11.)  In Exhibit 1, Mangat submits that medical records were attached to the letter and seeks to include them as evidence before this Court.  (Pl.'s Mot. Augment Attach. #1 Mem. P. & A. 1-3, ECF No. 19; see id. Attach. #2 Ex. 1.)  He argues that the record is incomplete without these medical reports, and that they are needed for the Court to review the record as a whole.  (Pl.'s Mot. Augment Attach. #1 Mem. P. & A. 3, ECF No. 19.)  But the August 17, 2015 facsimile transmittal sheet from Mangat's counsel shows that a total of five pages were sent to the ALJ.  (Admin. R. 839, ECF No. 11.)  Yet, the confirmation shows that the file received by the Social Security Administration on August 17, 2015, contained 8,557 kB of text data, suggesting that more than a five-page letter was sent to ALJ Valentino.  (See Pl.'s Mot. Augment Attach. #2, at 1, ECF No. 16.)

The Commissioner opposes the request to supplement, arguing that the "exhibit submitted by Plaintiff was not considered by the ALJ or the Appeals Council, and therefore cannot be included as part of the record upon which this Court may issue a decision . . . ."  (Def.'s Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 18, ECF No. 20.)  Defendant also argues that the majority of the evidence is "not new, as it already exists in the record."  (Id.)  The Commissioner claims that the only new evidence in the

submission is the operative reports from Mangat's bypass surgery in November of 2009. (Id. at 19.)  Defendant contends that the ALJ considered the fact of the surgery in reaching his decision, and predicated his opinion on Plaintiff's recovery following the heart surgery.  (Id.)

The purpose of this action is to evaluate the record before the Commissioner in reaching a decision.  The Defendant is required to "file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based."  42 U.S.C. § 405(g).  The first page of the Administrative Record is a "Certification" that states, "[T]he documents annexed hereto constitute a full and accurate transcript of the entire record of proceedings relating to this case."  (Admin. R. Caption Page, ECF No. 10.)  The documents transmitted on August 17, 2015, were before the ALJ, but they are not all included in the Administrative Record.  See Tackett, 180 F.3d at 197-98 (stating that the court may set aside a "denial of disability insurance benefits when the ALJ's findings . . . are not supported by substantial evidence in the record as a whole[]"); see also Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993 ("We consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion.").

Most of the evidence submitted in his Motion to Augment is duplicative of documentation already in the record.  See McCoy v. Astrue, No. C 11-00782 CRB, 2011 WL 4595008, at *3 (N.D. Cal. Oct. 4, 2011) (denying plaintiff's motion to augment because no legal authority supported the motion and because augmentation of the record would be duplicative and immaterial).  The records submitted are Plaintiff's operative reports from his November 2009 bypass surgery and subsequent stenting.  The fact that Mangat underwent surgery in 2009 is not in dispute and was acknowledged by the ALJ: "The Sharp Chula Vista records from November 12, 2009, showed the urgent coronary bypass procedure."  (Admin. R. at 518, ECF No. 11.)  The documents that are missing from the record go to whether a remand for further proceedings or an award of benefits is the proper remedy.

In any event, because the Court concludes below that the ALJ erred in making his determination, Plaintiff's Motion to Augment the Record is denied as moot.

**C.    Plaintiff's Claims**

In the Motion for Summary Judgment, Plaintiff argues that the ALJ erred in rejecting Mangat's testimony about the limitations his symptoms produce.  (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 7-14, ECF No. 18.)  Plaintiff contends that the ALJ should have credited Mangat's statements regarding his impairments to the extent they were supported by the medical evidence.  (Id. at 7.)  Mangat also argues that Judge Valentino failed to properly evaluate the medical evidence and opinions of treating physicians.  (Id. at 15.)

1.    The ALJ's Decision

The ALJ concluded, on August 25, 2015, that Plaintiff had not engaged in substantial gainful activity from December 10, 2008, his alleged onset date, through March 9, 2011.  (Admin. R. 518, ECF No. 11.)  During this time period, Mangat had the following severe impairments:  coronary artery disease; arthralgia from gout and degenerative joint disease; diabetes mellitus; renal insufficiency; and hypertension.  (Id.)  Judge Valentino gave "great weight" to the determination of the medical expert, Dr. Vu, who acknowledged that Plaintiff suffered from severe impairments related to these conditions prior to March 10, 2011.  (Id.)  The decision discussed medical evidence from several providers who treated Mangat throughout the relevant period:

> Kaiser medical records prior to the relevant period March to October 2008 reported treatment for acute conditions and evidence of gout flare-ups, hand and knee swelling, and elevated sugar levels (Ex. 1F).
>
> Progress notes from Operation Samahan in 2009 reported decreased sensation in the lower extremity with a diagnosis of neuropathy, swelling, and gouty arthritis intermittently (Ex. 15F/3, 6, 8, 14, 15, 22).
> The Sharp Chula Vista records from November 12, 2009, showed the urgent coronary bypass procedure (Ex. 25F/1-5.)

18

On November 30, 2009, the consultative examiner, Phong Dao, D.O., examined the claimant and found limited range of motion in the lumbar spine. An x-ray of the lumbar spine revealed spondylosis at L3-L5 and mild disc degeneration at L3-L4 (Ex. 7F/9-10). Dr. Dao reported an impression of diabetes mellitus insulin-dependent and a history of diabetic peripheral neuropathy but sensation to light touch in the extremities was intact (Ex. 7F/7). He reported hypertension, controlled. He reported coronary artery disease with chest pain and dyspnea on exertion with ambulating about one block. He also had lumbar strain. Dr. Dao limited the claimant to sedentary work (Id.).

Progress notes from Genaro Fernandez dated December 31, 2009, indicated the claimant was recovering slowly post CAD surgery in November 2009, taking his medications, and EKG continued to show some abnormality (Ex. 11F/3-4).

Nephrology progress notes from Elena Maria Bautista Sacamay, M.D., dated April 2010 indicated that his ANA testing was positive (Ex. 14F/2, 9). Lab reports showed increased protein with creatine ration and total protein elevated (Ex. 14F/7; 15F/28-29; and 18F/5). The claimant took Prednisone for this condition (Ex. 15F/2-3, 31). On March 24, 2010, the claimant had minimal swelling in his hands and was able to walk without a cane (Ex. 15F/18).

Paradise Valley Hospital admitted the claimant on February 27, 2010, and discharged him on March 3, 2010, for polyarthralgia (Ex. 16F/2-3). ANA testing was positive (EX. 16F/7). An echocardiogram showed diastolic dysfunction and mild pulmonic insufficiency (Ex. 14F/11). A renal ultrasound showed nonobstructing multiple left renal stones (Ex. 16F/13).

Progress notes from Samahan Medical from January to December 2010 indicate swelling and joint pains, congestion issues, positive ANA, and elevated proteins (Ex. 24F/44, 63, 65).

Progress notes from Dr. Fernandez in September 2010 showed occasional chest pains despite compliance with medication, edema in the lower extremities, and decreased sensation in the lower extremities (Ex. 19F/2-3).

Paradise Valley emergency room records in 2010 reported foot pain due to gout (Ex. 23F/121). He was admitted for polyarthralgias (Ex. 23F/80) and examination revealed erythema on multiple joints (Ex. 23F/83, 92). X-

rays of the joints showed osteoarthritic changes.  In 2011, he had
swelling/edema in the upper and lower extremities and his condition of gout,
osteoarthritis, and renal insufficiency were addressed (Ex. 23F/4).

On February 10, 2011, the claimant went to the emergency room with
complaints of pain and edema involving his hands and feet but denied chest
pain or shortness of breath (Ex. 25F/3).  The discharge diagnosis is acute
arthralgia/myalgia (Ex. 35F/6).  He has multiple other visits prior to this date
in 2011 for complaints related to high blood sugar and bilateral foot and
hand swelling (Ex. 35F/13).  Exams showed mild tenderness and edema of
the feet bilaterally with no erythema, warmth, and normal range of motion
(Ex. 35F/14).

(Id. at 518-19.)  Based on this, the ALJ reasoned that Mangat's "severe physical
impairments . . . cause more than minimal limitations in work-related functioning."  (Id.
at 520.)  At step three, Judge Valentino concluded that Plaintiff did not have an
impairment that met or medically equaled the listed impairments in 20 C.F.R. Part 404,
Subpart P, Appendix 1.  (Id.)  In determining Mangat's residual functional capacity
(RFC), the ALJ found that Plaintiff could perform a range of light work as defined in 20
C.F.R. § 404.1567(b).  (Id. at 521.)  At step four, the ALJ determined that Plaintiff could
not perform his past relevant work.  (Id. at 525.)  At step five, the ALJ found that from
December 10, 2008, through March 9, 2011, Plaintiff could perform jobs that existed in
significant numbers in the national economy.  (Id. at 525-26.)  Judge Valentino concluded
that Plaintiff was not under a disability from December 10, 2008, through March 9, 2011.
(Id. at 527.)

    2.  Mangat's Credibility

    Plaintiff argues that the ALJ's credibility determination and rejection of Mangat's
testimony are flawed.  (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 7-14, ECF No. 18.)
Mangat argues that because the ALJ did not make a finding of malingering, he had to
articulate clear and convincing reasons for rejecting the pain and limitation testimony.
(Id. at 9.)  Plaintiff points out that one of the purposes of the remand to the ALJ was to

consider Mangat's testimony in light of an expanded record, yet at the September 2, 2014 remand hearing, Judge Valentino asked Plaintiff only two questions.  (Id.)

"In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony.'" Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)).  To decide whether a plaintiff's testimony regarding subjective pain is credible, the adjudicator must engage in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007); see Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).  "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Lingenfelter, 504 F.3d at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ may "reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons'" for doing so.  Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (reaffirming the "clear and convincing" requirement for credibility findings).  "While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); see Smolen, 80 F.3d at 1282 (same).

In this case, the ALJ found that between December 10, 2008, and March 9, 2011, Plaintiff suffered from coronary artery disease; arthralgia from gout and degenerative joint disease; diabetes mellitus; renal insufficiency; and hypertension.  (Admin. R. 518, ECF No. 11.)  Based on the objective medical evidence, Judge Valentino determined that Mangat suffered from severe physical impairments which caused limitations in work-related functioning.  (Id. at 520.)  The first prong of the inquiry is therefore satisfied.

Furthermore, there is no evidence of malingering.  Consequently, the Court must assess whether the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony concerning his subjective pain that are supported by evidence in the record.

The ALJ found Mangat's allegations "concerning the intensity, persistence, and limiting effects of his symptoms [were] less than fully credible."  (Id. at 522.)  The ALJ gave the following explanation for the adverse credibility determination:

> The undersigned finds that the claimant's allegations concerning the intensity, persistence, and limiting effects of his symptoms are less than fully credible.  The claimant alleges that his impairments prevent him from working during the relevant period.  However, the claimant failed to submit a Function Report – Adult form so the undersigned is unable to ascertain the claimant's activities of daily living.  The record shows that the claimant primarily received routine and conservative treatment for his impairments with prescribed medications during the relevant period, as discussed above.  Based on the totality of the evidence, the undersigned finds that the record supports finding the claimant capable of light work.

(Id.)

The reasons stated by the ALJ to discount Mangat's credibility are not clear and convincing, which "'is the most demanding [standard] required in Social Security cases.'"  Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); see also Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014) (reaffirming that "specific, clear, and convincing reasons" are required for rejecting a claimant's testimony).  "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."  Smolen v. Chater, 80 F.3d at 1284; see also Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (the ALJ must provide specific, cogent reasons for the disbelief and state the reasons why the testimony is not persuasive).  "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'"  Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d at 345-46.

The ALJ's credibility determination does not meet the clear and convincing standard because Judge Valentino failed to specify which of Mangat's statements were unpersuasive. At the remand hearing, the ALJ asked Plaintiff only two questions, none of which elicited testimony about his symptoms. (Admin. R. 594, ECF No. 11.) The ALJ's decision does not discuss Plaintiff's answers, and Mangat did not testify about his limitations at either the September 2, 2014 hearing or the July 30, 2015 supplemental hearing. The adverse credibility finding in 2015 is also inconsistent with ALJ Valentino's 2012 decision which accepted Mangat's statements about his condition. On July 24, 2012, Plaintiff testified at the hearing before Judge Valentino,[9] and the ALJ concluded that Mangat was credible when he explained "that he is unable to work due to pain in his chest as well as swelling in his feet and elbows," about his pain in the chest due to heart disease, and his fatigue and shortness of breath. (Id. at 680.)

In his 2012 decision, Judge Valentino held that Mangat had severe impairments, but singly or in combination, he did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Id. at 679.) Nevertheless, the ALJ concluded, "Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in the national economy that the claimant can perform." (Id. at 681 (emphasis added).)

Unlike in 2012, ALJ Valentino now concluded that for the period from December 10, 2008, through March 9, 2011, Mangat could perform light work and could lift and carry twenty pounds occasionally and ten pounds frequently. (Id. at 521.) Furthermore, he found that Plaintiff would have been able to perform the requirements of occupations such as a counter clerk or usher. (Id. at 526.) Judge Valentino held that "[Mangat's] allegations concerning the intensity, persistence, and limiting effects of his symptoms are less than fully credible." (Id. at 522.)

---

[9] The transcript of that hearing is not part of the record before the Court.

To support a finding that the plaintiff was not credible, the ALJ must "point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make specific findings "stat[ing] which pain testimony is not credible and what evidence suggests the complaints are not credible." Id. The ALJ may consider the following when assessing the claimant's credibility: (1) his reputation for truthfulness; (2) inconsistences in the claimant's testimony or between the testimony and conduct; (3) the claimant's daily activities; (4) work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas v. Barnhart, 278 F.3d at 958-59 (citing Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).

The Commissioner appears to argue that ALJ's credibility determination was proper to the extent Mangat's November 2010 testimony before ALJ Parker was in conflict with the medical evidence. (See Def.'s Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 14, ECF No. 20.) Even assuming the basis for ALJ Valentino's credibility finding was his review of Mangat's 2010 testimony before another judge, Judge Valentino's 2015 decision failed to identify which statements were inconsistent and why. See Brown-Hunter, 806 F.3d at 493-94 (rejecting the determination that the claimant was not credible where the ALJ did not specifically identify any inconsistencies but "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination").

In Brown-Hunter, the claimant challenged the ALJ's rejection of her symptom testimony. Brown-Hunter, 806 F.3d at 491. The district court rejected the claimant's arguments, identifying inconsistences in the medical record that it believed "could be reasonable inferences drawn from the ALJ's summary of the evidence." See id. On appeal, the Ninth Circuit held that the ALJ had failed to identify the testimony she found not credible and did not link that testimony to the particular parts of the record supporting the determination that the claimant was not credible. Id. at 493. The Court explained

24

1  that "[a] reviewing court may not make independent findings based on the evidence

2  before the ALJ to conclude that the ALJ's error was harmless." <u>Id.</u> at 492.  Thus, even if

3  the district court could identify inconsistencies with the medical record, the court's

4  analysis could not supplant the ALJ's obligation to assess the claimant's credibility.  <u>See</u>

5  <u>id.</u>

6        Defendant cites Mangat's testimony before ALJ Parker regarding the pain in his

7  chest and feet as examples of statements that may be the basis for ALJ Valentino's

8  adverse credibility finding.  (Def.'s Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 14,

9  ECF No. 20.)  Defendant alleges these statements conflict with the medical evidence in

10  the record.  (<u>Id.</u>)  But the ALJ may not rely solely on a contradiction with, or a lack of

11  support from, the objective medical evidence as a basis to find a claimant not credible.

12  20 C.F.R. § 404.1529(c)(2) (2016); <u>Rollins v. Massanari</u>, 261 F.3d 853, 856, 857 (9th

13  Cir. 2001) (alteration in original) ("'[O]nce a claimant produces objective medical

14  evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective

15  complaints based solely on a lack of objective medical evidence to fully corroborate the

16  alleged severity of pain.'" (quoting <u>Bunnell</u>, 947 F.2d at 345)).

17        Furthermore, Judge Valentino did not cite these statements as reasons for finding

18  Mangat only partially credible.  The Court "cannot affirm the decision of an agency on a

19  ground that the agency did not invoke in making its decision." <u>Pinto v. Massanari</u>, 249

20  F.3d 840, 847 (9th Cir. 2001).  The Court is "constrained to <u>review</u> the reasons the ALJ

21  asserts." <u>Brown-Hunter</u>, 806 F.3d at 492 (quoting <u>Connett v. Barnhart</u>, 340 F.3d 871,

22  874 (9th Cir. 2003)).  The ALJ's credibility discussion did not specifically refer to

23  Plaintiff's statements to ALJ Parker or identify the grounds Defendant asserts support the

24  ALJ's adverse credibility finding.  Because ALJ Valentino did not rely on these reasons

25  in his decision, the Defendant's later justifications cannot serve as the basis for an adverse

26  credibility determination.  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 n.2 (9th Cir.

27  2008).

28

25

15cv2312 AJB RBB

The ALJ wrote that Mangat's "allegation of inability to work since December 10, 2008, due to disability is . . . somewhat disingenuous given the fact he reported ceasing work activity due to being 'laid off.'"  (Admin. R. 522, ECF No. 11.)  Defendant cites Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001), arguing that the ALJ properly found Mangat less than fully credible because he was laid off from his job.  (Def.'s Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 16, ECF No. 20.)  In Bruton, the Ninth Circuit upheld an ALJ's negative credibility finding, in part, because the claimant "stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off," not because he was injured.  Id. at 828.  Bruton, however, is factually distinct.  There, the claimant testified at the administrative hearing that he was laid off; however, his disability application alleged that he stopped working because of "lower back pain, pain in his left arm, left shoulder, left leg, and left foot."  Bruton, 268 F.3d at 826, 828.  Further, the ALJ in Bruton gave additional reasons to reject pain testimony, including that the claimant waited nine months to seek any medical treatment despite his complaints of severe pain.  Id. at 828.

There are no comparable inconsistencies in this case.  The disability report cited by the ALJ indicates that Plaintiff's ability to work was limited due to "diabetes, difficulty walking and back pain."  (Admin. R. 188, ECF No. 11.)  Plaintiff alleges that he was let go because he failed his breathing test.  (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 10, ECF No. 18.)  The medical record before the ALJ included Kaiser Permanente records from October 29, 2008, indicating that Mangat had active tuberculosis six to eight years prior to that, has chronic scarring on his x-ray, and was unable to pass the respirator test at work.  (Id. at 9-10; see Admin. R. 271, ECF No. 11.)  The record does not support inferences that Mangat did not suffer from severe impairments and sought disability benefits because he had been laid off.  The ALJ's 2015 decision acknowledges that prior to the alleged disability date Plaintiff sought treatment for "acute conditions and . . . gout flare-ups, hand and knee swelling, and elevated sugar levels."  (Id. at 518.)

Additionally, three years earlier, in his July 24, 2012 decision, Judge Valentino found that Mangat's testimony about his inability to work was credible.  (Id. at 680.)

The ALJ also stated that he was unable to ascertain Mangat's activities of daily living because Plaintiff did not submit a report form.  (Id. at 522.)  The decision does not point out to any discrepancy in the record or explain how the absence of a report undermined Plaintiff's credibility.  Plaintiff argues that he testified to his daily activities at the first hearing before Judge Parker, and if the ALJ perceived any inconsistency, he should have inquired to resolve it.  (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 13, ECF No. 18.)  Ambiguous evidence, or the ALJ's finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  See Smolen, 80 F.3d at 1288; Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998).  If the ALJ were concerned about the Plaintiff's ability to perform daily activities, he could have questioned Mangat at the hearing.

The ALJ's stated rational does not provide an adequate basis for rejecting Plaintiff's subjective complaints.  The ALJ's credibility determination was conclusory and failed to offer clear and convincing reasons supported by substantial evidence to find that Plaintiff's allegations were not credible.  Defendant's examples attempt to extrapolate from the ALJ's recitation of the medical evidence; they are not grounds expressly stated by the ALJ as supporting an adverse credibility determination.  This court may not draw inferences from the ALJ's summary of the medical evidence to find a basis for affirming the ALJ's adverse credibility determination.  Brown-Hunter, 806 F.3d at 492.  Because Judge Valentino failed to give specific, clear, and convincing reasons for discounting Mangat's alleged limitations, the ALJ's credibility finding was not supported by substantial evidence.

3.  Treating Physician Evidence

Plaintiff alleges that the ALJ erred in concluding that Mangat had the residual functional capacity to perform light work because the ALJ adopted the opinions of the

27

nonexamining physician, Dr. Vu, over every examining physician in the record.  (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 15, ECF No. 18.)  Mangat argues that the opinion of Dr. Sacamay, his treating physician, was entitled to more weight and was consistent with other medical evidence, including the opinions of Dr. Dao, the consultative examiner who saw Plaintiff in November of 2009.  (Id. at 23.)  Plaintiff argues that in granting disability on his subsequent application, Judge Valentino relied on Dr. Sacamay's report indicating a diagnosis of uncontrolled diabetes, chronic renal failure, polyarticular gouty arthritis, coronary artery disease status post bypass surgery 2009, history of congestive heart failure, and hypertension with fatigue, joint swelling and pain.  (Id. at 16.)  Mangat also points out that after reversing the first unfavorable determination, the district court remanded the case to evaluate the additional medical evidence from Dr. Sacamay, as well as Mangat's testimony in light of this evidence.  (Id. at 16-17.)

A treating source's opinion about the nature and severity of a medical condition must be given controlling weight when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ."  20 C.F.R. § 404.1527(c)(2) (2016).  If a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," it should not be given controlling weight.  Orn, 495 F.3d at 631.  When a treating source's opinion is not given controlling weight, its probative value must be determined by considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and depth of the treatment relationship; (3) the degree of support, particularly in the form of medical records and tests, for the treating source's opinion; (4) the opinion's consistency with the record as a whole; (5) whether the treating source is a specialist in the area of treatment; (6) other factors relevant to the determination.  Id. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).  Substantial evidence that contradicts a treating physician's opinion may consist of either (1) an examining physician's opinion or (2) a non-examining physician's

opinion combined with other evidence.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

On remand, pursuant to the district court's order and the directions from the Appeals Council, the ALJ was to "reconsider the weight afforded to Dr. Sacamay's opinion and reconsider the claimant's subjective complaints in light of the additional evidence." (Admin. R. 515, ECF No. 11.)  In his decision dated August 25, 2015, the ALJ found Mangat capable of performing light work.  (Id. at 525.)  In reaching this conclusion, Judge Valentino discussed the medical opinions of Dr. Dao, the consultative examiner who saw Plaintiff in November of 2009, and Dr. Vu, the non-examining expert. (Id. at 522-23.)  Judge Valentino gave "great weight to Dr. Vu's very thorough and detailed medical expert opinion and testimony at the supplemental hearing."  (Id. at 523.) The ALJ gave lesser weight to Dr. Dao's opinion limiting the claimant to sedentary work based on internal inconsistencies with an "unremarkable physical examination."  (Id. at 524.)  He afforded "greater weight to the non-examining State agency medical consultants' opinions, at the initial and reconsideration levels, that the claimant could perform light work."  (Id.)   With regard to Dr. Sacamay's diagnosis and opinion, the ALJ wrote:

> The undersigned gives lesser weight to the treating source opinions from Dr. Sacamay (Ex. 23F, 24F, and 36F).  On March 9, 2011, Dr. Sacamay wrote on a prescription pad a note stating that the claimant had multiple medical problems and he would be unable and ineffective for employment (Ex. 23F/2 and 36F/1).  Dr. Sacamay did not include any supporting narrative statement detailing the claimant's objective and clinical findings.  The opinion does not state the treatment provided to the claimant, nor does it explain why treatment has failed to control the claimant's symptoms.  . . . .  In contrast, Dr. Sacamay completed a Physical Residual Functional Capacity Questionnaire on March 10, 2011, which detailed the claimant's impairments and resulting limitations (Ex. 36F).  . . . .  The undersigned does not find that this opinion relates back to December 10, 2008, nor does Dr. Sacamay opine that it does (Ex. 36F).  There is also no other medical opinion in the record to support Dr. Sacamay's opinion of a less than sedentary RFC prior to March 10, 2011, let alone back to December 10, 2008.  The earliest medical evidence from Dr. Sacamay in the

record is October 18, 2010, and the progress note is mostly illegible with only a mention of complaints of back pain due to a kidney stone (Ex. 22F/3).

This is not sufficient evidence to support Dr. Sacamay's March 10, 2011, opinion to relate back to December 10, 2008 through March 9, 2011.

(Id.)

Plaintiff contends that the ALJ erred in concluding that Dr. Sacamay's opinion cannot relate back to the alleged onset date.  (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 17, ECF No. 18.)  Mangat cites Social Security Ruling 83-20 to support the claim that his impairments predate the treating physician's report date because they are not of traumatic origin.  (Id.)

Social Security Ruling 83-20 ("SSR 83–20") provides rules for determining the onset date of a disability.  See generally SSR 83-20, 1983 WL 31249, at *1 (1983).  "[I]t is essential that the onset date be correctly established and supported by the evidence . . . ."  Id.  The Ruling provides that for disabilities without a "traumatic origin," the Commissioner should consider "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity[,]" and "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling."  Id. at *2.  Specifically, when precise information is not available, "it may be possible, based on the medical evidence[,] to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working."  Id. at *3.

Defendant argues that Mangat cannot rely on Dr. Sacamay's  March 10, 2011 report because "Plaintiff was adamant at the remand hearings that the ALJ should not consider any evidence after the relevant period."  (Def.'s Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 8, ECF No. 20.)  The Commissioner misstates the record.  At the remand hearing, the ALJ addressed the procedural posture of the case, and acknowledged that Plaintiff received a favorable decision on the subsequent application with the onset date

of March 10, 2011.  (Admin. R. 537, ECF No. 11.)  The ALJ expressed a concern that by cross-examining the medical expert, Plaintiff's counsel may jeopardize the favorable decision that Judge Valentino had entered for the later period:  "So, it's entirely your call.  [Medical expert] will testify to the current period.  I awarded him disability, an onset of 3/10/11, so now we're going back to December, 2008 through the present date here.  (Id. at 538.)  In response, Mangat's counsel argued that the remand proceeding would not affect the subsequent decision issued in 2012:

> ATTY:  So, the period of this remand hearing, which this is the remand hearing.  The decision that you have made on the other case was for a subsequent application that this remand case had not been associated with.  So, my question is — and if it's going to be different for you I will present it to Mr. Mangat, but the period that I believe we were — are here about is from December 10th, 2008 to[,] I believe, March 1 or March 10th, 2011 only.  The subsequent period is not in this record, nor was it put before Dr. Vu — presented to him.  And I also note that the 26F, the records go up to, I think 32F or something like that, and the part of issue that I think arose, and I know that I covered some of this in the reply that I had sent, but — like for example the coronary artery disease, [Dr. Vu] indicates that he had a recovery, you know, a good recovery from them, but he's had two stentings since due to almost full oc[c]lusions.  In August of 2010 and also in, I think, it was March of 2011.  So — and that record is actually in an exhibit after 26F, the 2010.  So, I mean I would be happy to go forward to discuss the period prior to March, 2011, but I do not believe his current — the second application would be open because it had also been issued more than a year, it's almost three years old at this point, the 2012.

(Id. at 538-39.)  Mangat points out that his counsel did not focus on the later report because "the ALJ threatened to take Mr. Mangat's benefits after March 2011 away reopening the entire period despite the directive of the Appeals Council."  (Pl.'s Reply 5, ECF No. 27.)

The ALJ erred in concluding that Dr. Sacamay's March 10, 2011 report did not "relate" to the disability period ending March 9, 2011.  Medical reports containing observations made after the period of disability are relevant to assess the disability.  Lester, 81 F.3d at 832.  The ALJ must consider impairments even if they were diagnosed

after the alleged onset date.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (holding that the ALJ erred by rejecting limitations because they were based on a "recent" diagnosis of a "non-severe" impairment).  "It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis."  Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) (citing Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985)).

The ALJ also failed to give sufficiently specific reasons for rejecting the March 9, 2011 note in which Dr. Sacamay stated that Mangat was unable to work due to his "multiple medical problems."  (Admin. R. 524, ECF No. 11.)  The decision argued that opinions regarding inability to work are "issues for the Commissioner and are not considered medical opinions."  (Id.)  "Although the ALJ is not bound by an expert medical opinion on the ultimate question of disability, [the ALJ] must provide 'specific and legitimate' reasons for rejecting the opinion of a treating physician."  Tommasetti, 533 F.3d at 1041.  Still, "[t]he Commissioner is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments.  Lester, 81 F.3d at 832-33 (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).  The Ninth Circuit explained in Embrey that "[t]he subjective judgments of treating physicians are important, and properly play a part in their medical evaluations.  Accordingly, the ultimate conclusions of those physicians must be given substantial weight; they cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail."  Embrey, 849 F.2d at 422 (reversing and remanding because the ALJ failed to give sufficiently specific reasons for rejecting the conclusion of three treating physicians and one consulting physician that the claimant was disabled due to his medical condition).

Judge Valentino rejected the March 9, 2011 note as unsupported by any "narrative statement detailing the claimant's objective and clinical findings."  (Admin. R. 524, ECF No. 11.)  He contrasted the note with the report Dr. Sacamay completed the following day, on March 10, 2011, which detailed Plaintiff's impairments and resulting limitations.

Even though the physician's report was made the next day, the ALJ refused to view these statements jointly, but instead distinguished the later report as "evidence that supported the prior favorable decision whereby the claimant requested an amended onset date of March 10, 2011." (Id.) Dr. Sacamay's March 9, 2011 note regarding disability was brief, but she had treated Mangat since March 2010, (see id. at 409-10), and her diagnosis should have been given more consideration. As discussed above, the March 10, 2011 report should have been considered contemporaneously with the note to evaluate the existence of disability in the preceding period. See Smith, 849 F.2d at 1225 (citing Kemp v. Weinberger, 522 F.2d 967, 969 (9th Cir. 1975)).

Judge Valentino stated that "the earliest medical evidence from Dr. Sacamay in the record is October 18, 2010," but discounted that evidence as "mostly illegible with only a mention of complaints of back pain due to a kidney stone." (Admin. R. 524, ECF No. 11.) Yet, the record shows that Dr. Sacamay treated Mangat in March 2010. (See id. at 409-10.) Furthermore, Dr. Sacamay diagnosed Mangat with stage three chronic kidney disease on October 18, 2010. (Id. at 493.) Other medical evidence in the record supports the conclusion that Mangat suffered from chronic renal disease. On November 17, 2010, ALJ Parker wrote that Plaintiff had "chronic renal insufficiency secondary to his diabetes." (See id. at 21.) Judge Valentino's conclusory statement that "Dr. Sacamay's opinion is inconsistent with the medical evidence discussed above" is contradicted by ALJ Parker's 2010 decision.

Diagnosis and treatment for multiple other conditions that predate Dr. Sacamay's March 10, 2011 report were acknowledged by Judge Valentino. For example, records from Kaiser dating from March to October 2008 showed treatment for acute conditions, gout flare-ups, hand and knee swelling, and elevated sugar levels. (Id. at 518.) Operation Samahan records from 2009 indicated a diagnosis of neuropathy, swelling, and gouty arthritis. (Id.) Mangat's urgent coronary bypass procedure at Sharp Chula Vista was on November 12, 2009. (Id.) Shortly after the bypass, Plaintiff was examined by Dr. Dao, the agency examining consultant, who noted diabetes mellitus, hypertension, and

coronary artery disease, and limited Mangat to sedentary work.  (Id. at 519.)  In December 2009, Mangat's recovery was slow and his EKG showed some abnormality.  (See id.)  Two months later, in February 2010, Plaintiff was admitted to the Paradise Valley Hospital for polyarthralgia.  He had a positive ANA test, his echocardiogram showed "diastolic dysfunction and mild pulmonic insufficiency," and ultrasound showed multiple renal stones.  (Id.)  Throughout 2010 Mangat was treated at Samahan Medical for various conditions, including swelling and joint pains, congestion issues, positive ANA, and elevated proteins.  He visited Paradise Valley emergency room multiple times in 2010 to treat swelling and pain in his hands and feet, as well as high blood sugar, and was diagnosed with acute arthralgia/myalgia.  (Id.)

Despite describing objective evidence of Plaintiff's severe medical impairments, the ALJ gave little weight to the treating physician's opinion regarding disability.  (Id. at 524.)  The specific reasons given by the ALJ do not legitimately warrant giving little weight to Dr. Sacamay's opinion.  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d at 830) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record.").  Judge Valentino assigned great weight to the conclusions of the nonexamining physician, Dr. Vu, whose opinion appears to contradict that of Dr. Sacamay.  (Id. at 523-24.)  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician."  Lester, 81 F.3d at 831 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)).  "[T]he report of [a] non-treating, non-examining physician, combined with the ALJ's own observance of [the] claimant's demeanor at the hearing did not constitute substantial evidence" and does not support an ALJ's "decision to reject the examining physician's opinion that the claimant was disabled."  Id. (alterations in original) (quoting Gallant, 753 F.2d at 1456) (internal quotation marks omitted).

1    Moreover, an ALJ' s conclusory statement that a treating physician's opinion is

2 unsupported by medical evidence is insufficient to overcome the deference afforded

3 treating doctors' conclusions concerning their patients.  <u>See</u> <u>Reddick</u>, 157 F.3d at 725 n.7

4 (citing <u>Embrey v. Bowen</u>, 849 F.2d at 422) ("To say that medical opinions are not

5 supported by sufficient objecting findings or are contrary to the preponderant conclusions

6 mandated by the objective findings does not achieve the level of specificity our prior

7 cases have required, even when the objective factors are listed seriatim.").  Dr. Sacamay

8 treated Plaintiff extensively and concluded that Mangat likely qualified for disability

9 because he was unable to work due to his "multiple medical problems."  (Admin. R. 524,

10 ECF No. 11.)  Based on the length of the treatment relationship and her experience with

11 Mangat, Dr. Sacamay was in the best position to opine on Plaintiff's multiple medical

12 conditions.  <u>Lester</u>, 81 F.3d at 833 ("The treating physician's continuing relationship with

13 the claimant makes him especially qualified to evaluate reports from examining doctors,

14 to integrate the medical information they provide, and to form an overall conclusion as to

15 functional capacities and limitations, as well as to prescribe or approve the overall course

16 of treatment.").  The ALJ failed to articulate specific reasons supported by substantial

17 evidence for rejecting Dr. Sacamay's conclusions.

18 **D.  Remand for Award of Benefits**

19    The court has discretion to remand a case either for additional evidence and

20 findings or to award benefits.  <u>Smolen v. Chater</u>, 80 F.3d at 1292.  Mangat argues that the

21 ALJ's decision should be reversed and the case remanded to the agency for an award of

22 benefits.  (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 23-24, ECF No. 18.)  In the

23 alternative, Plaintiff argues that the Court should remand the case for further proceedings,

24 including consideration of Mangat's onset date prior to March 10, 2011; reaffirming

25 disability prior to that date; and evaluating Mangat's testimony "in light of the expanded

26 record."  (<u>Id.</u> at 24.)

27    The Commissioner disagrees that the Court should reverse the ALJ's decision, but

28 urges that if the agency is reversed, the proper remedy would be to remand for further

administrative proceedings.  (Def.'s Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 19-20, ECF No. 20.)

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)).  If, however, the record has been fully developed and further proceedings would serve no useful purpose, the court should remand with directions to award benefits. Id. at 593 (citing Smolen, 80 F.3d at 1292).

> More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id. (citing Harman, 211 F.3d at 1178).

In a more recent case, Trnavsky v. Colvin, 636 F. App'x 390, 391 (9th Cir. 2016), the court explained the Harman analysis.  "If the first element [under Harman] is met, the district court may credit the rejected evidence as true as a matter of law (the 'credit-as-true' doctrine) and analyze the next two elements of the Harman test under that assumption."  Id. (citing Benecke, 379 F.3d at 594).

In this case, the ALJ did not provide legally sufficient reasons for discrediting Mangat's pain and limitation testimony.  There is little support in the record for the ALJ's adverse credibility finding, given that Mangat was asked only two questions at the remand hearing.  Furthermore, the ALJ erred in giving lesser weight to the opinion of the treating physician Dr. Sacamay regarding Plaintiff's disability.  Much of the medical record predates Dr. Sacamay's March 10, 2011 diagnosis, and the ALJ should have considered that opinion to assess Mangat's disability during the relevant period.  Lester, 81 F.3d at 832.  The decision instead relied on the conclusions of the nonexamining

medical expert.  Yet, the medical consultant did not disagree with Dr. Sacamay's diagnosis, (see Admin. R. 1310, ECF No. 11), but merely reached different conclusions with regard to Mangat's limitations.  Because the ALJ failed to give legally sufficient reasons for rejecting the treating physician's opinion and discounting Mangat's pain and limitations testimony, the first step of the <u>Harman</u> analysis is satisfied.  <u>See</u> <u>Benecke v. Barnhart</u>, 379 F.3d at 594.

At step two of the <u>Harman</u> analysis, the court exercises its discretion to determine whether "no outstanding issues remain after crediting [the treating physician's] opinion as true, even though [a nonexamining physician] disagreed with the [treating physician's] assessment."  <u>Trnavsky</u>, 636 F. App'x at 392.  In <u>Trnavsky</u>, the court found that the nonexamining physician's opinion was based on "conjecture" and did not "materially conflict" with the opinion of the treating physician.  <u>Id.</u>  "The credit-as-true rule permits a reviewing court to 'credit as true' an improperly rejected treating physician's assessment over a non-examining non-treating physician's contrary opinion on the same question."  The district court's finding that the latter's opinion was not enough to raise an "outstanding issue" was within its discretion.  <u>See</u> <u>id.</u>

In Mangat's case, Dr. Vu was a nonexamining, nontreating medical expert.  (<u>See</u> Admin. R. 535-40, ECF No. 11.)  The doctor reviewed the records and concluded that Mangat's impairments, combined or separately, did not "meet or equal any impairment described in the Listing of Impairments."  (<u>Id.</u> at 524, 1311.)  Crediting Dr. Sacamy's statements as true, the opinions of a nonexamining and nontreating physician do not raise outstanding issues that would need to be resolved on remand.  This is especially true considering that Dr. Vu acknowledged that his opinion would change if medical records existed which show that additional heart stent procedures took place.  (<u>See</u> Admin. R. 563, ECF No. 11.)

If the improperly discredited medical evidence were credited as true, the ALJ would be required to find Mangat disabled on remand, meeting the third prong of the

<u>Harman</u> analysis.  <u>See</u> <u>Trnavsky</u>, 636 F. App'x at 393.  This conclusion is consistent with Ninth Circuit precedent.

In <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1988), the Ninth Circuit found that substantial evidence did not support the conclusion that the claimant's condition did not meet or equal a listed impairment because the ALJ did not provide specific reasons for disregarding the opinion of the treating physician.  Rather than remanding for further proceedings, the Ninth Circuit accepted the treating physician's opinion and ordered the payment of benefits.  <u>Id.</u>  In <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987), the Ninth Circuit awarded benefits because no legitimate reasons were given for disregarding the physician's opinion and the Secretary's decision was not supported by substantial evidence.  Again, in <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990), the court awarded benefits when the ALJ did not provide legitimate reasons for disregarding the opinion of the treating physician and there was "no legitimate conflicting testimony."  Accordingly, a remand for an award of benefits is proper, and within this Court's discretion.  <u>See</u> <u>id.</u>

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment should be **GRANTED**, Defendant's Cross-Motion for Summary Judgment be **DENIED**, and the case be **REMANDED** for an award of benefits.  The Court **DENIES** Plaintiff's Motion to Augment the Record.

This Report and Recommendation will be submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before January 6, 2017.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before January 20, 2017.  The parties are advised that failure to file objections within the

//

//

38

1  specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>,

2  951 F.2d 1153 (9th Cir. 1991).

3  Dated:  December 13, 2016

4  _____
   Hon. Ruben B. Brooks

5  United States Magistrate Judge

6  cc:    Judge Battaglia
          Counsel of Record

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15cv2312 AJB RBB