UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO AZADA MANGAT,<br><br>                       Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                       Defendant. | Case No.:  15-CV-2312-AJB-RBB<br><br>**ORDER:**<br><br>**(1) ADOPTING IN PART REPORT AND RECOMMENDATION, (Doc. No. 30);**<br><br>**(2) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (Doc. Nos. 15, 18); AND**<br><br>**(3) DENYING COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT, (Doc. No. 20)** |

      On October 15, 2015, Plaintiff Ernesto Azada Mangat ("Plaintiff") filed a complaint seeking judicial review of the Social Security Administration Commissioner's ("Commissioner") decision denying his claim for disability insurance benefits. (Doc. No. 1.) On May 27, 2016, Plaintiff filed a motion for summary judgment, which he supplemented on June 3, 2016. (Doc. Nos. 15, 18.) The Commissioner filed a cross-motion for summary judgment on July 1, 2016. (Doc. No. 20.) On December 13, 2016, Magistrate Judge Ruben B. Brooks issued a report and recommendation ("R&R") recommending the

Court grant Plaintiff's motion for summary judgment, deny the Commissioner's cross-motion, and remand the case for an award of benefits. (*Id.* at 38.) Magistrate Judge Brooks also denied as moot Plaintiff's motion to augment the record. (*Id.* at 16–18; *see* Doc. No. 16.) On January 6, 2017, the Commissioner timely filed objections to the R&R, (Doc. No. 31), and Plaintiff replied, (Doc. No. 32). After reviewing the parties' papers and the record, and for the reasons set forth below, the Court **OVERRULES IN PART AND SUSTAINS IN PART** the Commissioner's objections, **ADOPTS IN PART** the R&R, **GRANTS** Plaintiff's motion for summary judgment, **DENIES** the Commissioner's cross-motion for summary judgment, and **REMANDS** this case to the ALJ for further proceedings consistent with this opinion.

## BACKGROUND

On January 29, 2009, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income for a disability commencing December 10, 2008.[1] (AR 139–45.)[2] A hearing was held before Administrative Law Judge ("ALJ") Larry Parker on November 10, 2010, which was denied on November 27, 2010. (AR 18–27.) The Appeals Council affirmed the ALJ's decision on September 6, 2011. (AR 5–7.) On November 4, 2011, Plaintiff challenged the denial before the Honorable Gonzalo P. Curiel, who ultimately granted Plaintiff's motion for summary judgment, denied the Commissioner's cross-motion for summary judgment, and remanded the case to evaluate additional evidence. (AR 651–67.) *See Mangat v. Astrue*, No. 11cv2579-GPC(BGS), 2013 WL 1386293 (S.D. Cal. Apr. 4, 2013).

While this appeal was pending, Plaintiff filed subsequent applications for disability

---

[1] Magistrate Judge Brooks's R&R provides a thorough and detailed summary of the relevant factual background in this case; accordingly, the majority of this section has been taken directly from the R&R following a *de novo* review of the Administrative Record.

[2] All references to "AR" are to the Administrative Record. The page numbers refer to those assigned in the original document, not to those assigned by the CM/ECF system. All other citations are to the docket numbers and the page numbers assigned by the CM/ECF system.

insurance benefits on June 21, 2010, and for supplemental security income on December 14, 2010. (*See* AR 670.) ALJ Peter Valentino held a hearing on these applications on May 24, 2012, and issued a favorable decision on July 24, 2012. (AR 673, 677.) ALJ Valentino found Plaintiff suffered from uncontrolled diabetes mellitus, chronic renal failure, polyarthritis, congestive heart failure, and coronary artery disease. (AR 679.) The ALJ also determined that Plaintiff had the residual functional capacity ("RFC") to sit, stand, or walk for less than two hours in an eight-hour workday, and to lift and carry less than ten pounds. (AR 679.)

In making these determinations, the ALJ credited Plaintiff's testimony about his condition and gave controlling weight to the medical opinions of Plaintiff's treating physicians, primary care provider Dr. Bautista-Sacamay ("Sacamay") and cardiologist Dr. Scharf. (AR 680.) Relevant to the instant appeal, the ALJ noted that Dr. Sacamay reported that Plaintiff "had uncontrolled diabetes, chronic renal failure, polyarthriticular gouty arthritis, coronary artery disease status post bypass surgery in 2009, and a history of congestive heart failure, hypertension and hyperlipidemia." (AR 680.) Based on his condition, Dr. Sacamay limited Plaintiff to less than two hours of sitting, standing, or walking during an eight-hour workday, and opined that Plaintiff would need to shift positions at will, take unscheduled breaks, and elevate his feet for two or three hours during the workday. (AR 680.) She further opined that Plaintiff could not bend or twist; was unable to carry more than ten pounds; and could not use his hands to grasp, turn, or twist objects. (AR 680.)

Dr. Scharf opined similarly, stating that Plaintiff "was incapable of even a low stress job" and describing Plaintiff's "condition as very severe." (AR 680.) The ALJ found Drs. Sacamay's and Scharf's evidence to be supported by the medical evidence, including Plaintiff's assessment at Paradise Valley Hospital in April 2011, where he was admitted for a coronary catheterization. (AR 680.) The hospital records indicated, *inter alia*, "coronary disease status post coronary artery bypass surgery and status post recent stenting of the right coronary artery graft[.]" (AR 680.)

The impartial medical expert who testified at that hearing opined that Plaintiff was capable of light exertional work. (AR 681.) However, ALJ Valentino gave that opinion little weight as unsupported by the medical evidence and contrary to the opinions of Plaintiff's treating physicians "who because of their history with [Plaintiff] are better able to assess the overall condition and functional capabilities." (AR 681.) Accordingly, on July 24, 2012, the ALJ issued a decision finding Plaintiff disabled since March 10, 2011. (AR 682.) The Appeals Council affirmed this decision on July 23, 2013. (AR 670–71.)

As noted above, while Plaintiff's 2010 applications were pending, Judge Curiel reversed the denial of Plaintiff's 2009 application and remanded for consideration of additional medical evidence on November 4, 2011. (AR 651–67.) *See Mangat*, 2013 WL 1386293. The Appeals Council noted the interim favorable decision on Plaintiff's 2010 applications and remanded to the ALJ for further proceedings for the period prior to March 10, 2011. (AR 670–71.)

On September 2, 2014, ALJ Valentino held a hearing regarding Plaintiff's disability status from December 10, 2008, to March 9, 2011. (AR 515, 518.) Dr. Vu, an impartial medical expert, appeared telephonically for this hearing. (AR 589.)

During the hearing, the ALJ asked Plaintiff's counsel to point to specific evidence in the record during the time period at issue to support Plaintiff's contention of disability. (*See* AR 591–92, 595–96.) It appeared, however, that medical exhibits pertinent to Plaintiff's case were missing from the file before ALJ Valentino and Dr. Vu. (AR 595, 598–600, 603.) Based on the evidence before him, Dr. Vu opined that Plaintiff had a full range of light exertional capacity prior to March 2011. (AR 605–06.) Pursuant to Plaintiff's counsel's request for a supplemental hearing, the ALJ permitted Plaintiff an opportunity to submit a post-hearing brief with missing medical records. (AR 608.)

A supplemental hearing before ALJ Valentino was conducted on July 30, 2015. (AR 535.) Prior to the hearing, Dr. Vu completed a three-page questionnaire, in which he listed coronary artery disease, renal insufficiency, arthralgia from gout and degenerative joint disease, diabetes mellitus, and hypertension as major medically determinable impairments

during the relevant time period. (AR 515–16, 518, 1310–12.) He opined that these impairments, either combined or separately, did not meet or equal any listing for cardiac, renal, or articular impairments. (AR 1311.)

At the supplemental hearing, Plaintiff's counsel challenged Dr. Vu's conclusion that Plaintiff had a good recovery following his November 2009 bypass surgery. (AR 543.) Plaintiff's counsel asserted that Plaintiff had been re-stented three times following the bypass surgery in November 2009, August 2010, and March 2011. (AR 543–45.) Based on Plaintiff's counsel's questioning, Dr. Vu acknowledged his conclusion concerning Plaintiff's recovery would change if Plaintiff did in fact require re-stenting. (AR 563.) Dr. Vu nonetheless remained convinced that Plaintiff did not meet or equal a listing and was capable of the full range of light work for the relevant time period. (AR 576–77.)

Following the supplemental hearing, on August 17, 2015, Plaintiff's counsel submitted additional evidence and briefing to ALJ Valentino on the issue of stenting following Plaintiff's November 2009 bypass surgery. (Doc. Nos. 19-1, 19-2, 19-3.) On August 25, 2015, the ALJ issued an unfavorable decision. (AR 515–27.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district judge's duties in connection with a magistrate judge's report and recommendation. The district judge must "make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see United States v. Remsing*, 874 F.2d 614, 617–18 (9th Cir. 1989).

An unsuccessful applicant for social security disability benefits may seek judicial review of a final agency decision. 42 U.S.C. § 405(g). However, "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th

Cir. 2014) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Accordingly, a reviewing court must "follow three important rules in [its] analysis of the ALJ's decision." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, the Court "leave[s] it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Treichler*, 775 F.3d at 1098. Second, the Court must "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (defining "substantial evidence" as more than a scintilla, but less than a preponderance). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Finally, the Court must uphold an ALJ's decision, even when the ALJ commits legal error if that error is harmless. *Treichler*, 775 F.3d at 1099.

## DISCUSSION

The Commissioner objects to the R&R on three grounds: (1) the Magistrate Judge assumed facts not found by the ALJ, the finder of fact in social security proceedings, (Doc. No. 31 at 2–4); (2) the Magistrate Judge incorrectly applied the Ninth Circuit's decision in *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), in his credibility analysis, (*id.* at 4–6); and (3) the proper remedy is remand to the ALJ for further administrative proceedings, not for an award of benefits, (*id.* at 6–10). Because the first and third objections are related, the Court will address the second objection first.

### I.     Plaintiff's Credibility

The Commissioner asserts Magistrate Judge Brooks improperly applied the Ninth Circuit's decision in *Brown-Hunter v. Colvin* to incorrectly conclude that ALJ Valentino's

1  credibility finding was not supported by substantial evidence. (*Id.* at 4–6.) The
2  Commissioner faults the R&R for relying on a "mechanistic understanding" of *Brown-*
3  *Hunter*, asserting that "a general statement [followed] with a specific discussion of the
4  record" is sufficient. (*Id.* at 4–5.)

5  "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must
6  make 'a credibility determination with findings sufficiently specific to permit the court to
7  conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony.'" *Turner v.*
8  *Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting *Thomas*,
9  278 F.3d at 958). In deciding whether a plaintiff's testimony regarding subjective pain is
10 credible, the adjudicator must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d
11 586, 591 (9th Cir. 2008) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir.
12 2007)). "'First, the ALJ must determine whether the claimant has presented objective
13 medical evidence of an underlying impairment which could reasonably be expected to
14 produce the pain or other symptoms alleged.'" *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).
15 Second, if the claimant satisfies the first step and there is no evidence of malingering, the
16 ALJ may "reject the claimant's testimony about the severity of the symptoms if she gives
17 'specific, clear and convincing reasons'" for doing so. *Id.* (quoting *Lingenfelter*, 504 F.3d
18 at 1036).

19 Here, ALJ Valentino determined that Plaintiff's "medically determinable
20 impairments could reasonably be expected to cause the alleged symptoms[.]" (AR 521.)
21 Accordingly, Magistrate Judge Brooks found, and the Court agrees, that "[t]he first prong
22 of the inquiry is [] satisfied." (Doc. No. 30 at 21.) The Court likewise agrees with the R&R
23 that there is no evidence of malingering. (*Id* at 22.) Consequently, the Court must assess
24 whether the ALJ provided specific, clear, and convincing reasons for discrediting
25 Plaintiff's testimony concerning his subjective pain that are supported by evidence in the
26 record.

27 The clear and convincing standard is "the most demanding required in Social
28 Security cases" and "is not an easy requirement to meet." *Garrison v. Colvin*, 759 F.3d

995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). To permit meaningful judicial review of the credibility determination, the ALJ must "specify which testimony []he finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Brown-Hunter*, 806 F.3d at 489. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

Furthermore, to support a finding that the plaintiff was not credible, the ALJ must "'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" *Vasquez*, 572 F.3d at 592 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). The ALJ can consider the following when assessing the claimant's credibility: (1) his reputation for truthfulness; (2) inconsistences in either his testimony or between his testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of his condition. *Thomas*, 278 F.3d at 958–59.

Having reviewed the ALJ's decision and supporting evidence *de novo*, the Court agrees with Magistrate Judge Brooks that ALJ Valentino erred in discrediting Plaintiff. As an initial matter, the ALJ's highly generalized adverse credibility determination failed to identify the specific statements he found unworthy of belief and so did not provide the basic information necessary to ensure meaningful judicial review. The Ninth Circuit has repeatedly instructed that an ALJ must "specify which testimony [he] finds not credible[.]" *Brown-Hunter*, 806 F.3d at 489; *see also Treichler*, 775 F.3d at 1102–03 (same).

Here, ALJ Valentino simply wrote that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible . . . ."

(AR 521.) The ALJ failed to point to specific parts of Plaintiff's testimony he discredited.[3] This error alone is fatal to the ALJ's credibility determination. *Francisco v. Colvin*, No. 14-cv-2905-BAS (WVG), 2016 WL 922654, at *8 (S.D. Cal. Feb. 8, 2016), *report and recommendation adopted in* 2016 WL 917240 (S.D. Cal. Mar. 10, 2016).

Having meticulously reviewed the ALJ's order, the closest the Court can find to specific testimony the ALJ discredited is Plaintiff's allegations of "alleged disability because of diabetes, difficulty walking, and back pain during the relevant period," and that "his impairments prevent[ed] him from working during the relevant period." (AR 522.) To the extent this constitutes specific testimony, which the Court finds it does not, the Court agrees with Magistrate Judge Brooks that the proffered reasons for discrediting it are not sufficiently specific, clear, and convincing.

For example, the ALJ found Plaintiff less than credible in part because Plaintiff "failed to submit a Function Report—Adult form so the undersigned is unable to ascertain [Plaintiff's] activities of daily living." (AR 522.) This is not a proper basis to discredit Plaintiff's testimony, particularly in light of the ALJ's duty to develop the record. "In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). "This duty exists even when the claimant is represented by counsel." *Id.* If ALJ Valentino thought Plaintiff's daily activities were pertinent to a credibility determination, he had the duty to conduct an appropriate inquiry by, for example, simply asking Plaintiff at one of the hearings. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (noting the ALJ's duty to develop the record is triggered by "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper

---

[3] This is not surprising, given that the ALJ asked Plaintiff all but two questions during the hearings on this matter following remand, though Plaintiff was present at both. (AR 535, 587, 594.)

evaluation of the evidence").[4]

The Court disagrees with the ALJ's assessment that Plaintiff's treatment during the relevant time period was conservative. ALJ Valentino was permitted to consider the nature of Plaintiff's treatment in his assessment of Plaintiff's credibility. *See Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (stating that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment). In characterizing Plaintiff's treatment as conservative, however, the ALJ glossed over the fact that Plaintiff underwent cardiac bypass surgery in November 2009. While some of Plaintiff's ailments may have been treated with only pain medication, (AR 523), the Court does not believe major heart surgery can seriously be characterized as "conservative" treatment.[5] *Cf. Childress v. Colvin*, No. 13-cv-03252-JSC, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("Several courts in this circuit have found the use of medication . . . , *and the absence of surgery or injections*, to be 'conservative' treatment." (emphasis added)). Similarly, while Plaintiff was originally prescribed oral diabetic medication, he "progressed to insulin therapy" during the relevant time period. (AR 337.) *Cf. Ascencio v. Colvin*, No. CV 14-00971-JEM, 2014 WL 5661882, at *5–6 (C.D. Cal. Nov. 4, 2014) (finding ALJ provided clear and convincing evidence for discounting plaintiff's subjective pain testimony, in part because ALJ "found that healthcare providers treated [p]laintiff's

---

[4] The Court notes details concerning Plaintiff's daily activities were ascertained at the initial hearing on this application, though that hearing was not before ALJ Valentino. (*See* AR 701–04.)

[5] Specifically, the pain medication Plaintiff was taking was Vicodin. (AR 702.) While the use of non-prescription pain medication qualifies as "conservative" treatment, it is questionable whether that characterization applies to a strong narcotic. *See Childress*, 2014 WL 4629593, at *12–13 & n.2 (finding conservative treatment factor had no bearing on credibility assessment because it was "not obvious whether the consistent use of [the narcotic Norco, used to relieve moderate to severe pain] (for several years) is 'conservative' or in conflict with [p]laintiff's pain testimony"); *Brunkalla-Saspa v. Colvin*, No. ED CV 13-1352 JCG, 2014 WL 1095958, at *1 (C.D. Cal. Mar. 18, 2014) ("[T]he ALJ found that Plaintiff had been conservatively treated with Vicodin. But Vicodin qualifies as strong medication to alleviate pain." (citations and internal quotation marks omitted)).

diabetes with oral medication, *not insulin*, and other conservative methods such as a low fat and low salt diet, exercise and abstinence from smoking" (emphasis added)).

The ALJ also found Plaintiff not credible on the basis that Plaintiff's assertion that he stopped working in December 2008 due to disability was "somewhat disingenuous" because Plaintiff reported ceasing work due to being "laid off." (AR 522.) However, that Plaintiff was laid off is not inherently inconsistent with his disability. The medical evidence shows that at the end of October 2008, a little more than one month before being laid off, Plaintiff was required to "wear a respirator [] and has not passed his respirator test." (AR 271.) The physician noted Plaintiff had active tuberculosis six to eight years previously and chronic scarring. (AR 271–72.) Progress report notes subsequent to Plaintiff being laid off documented the crackling in his lungs. (AR 366, 373, 377, 380, 383–85.) The Court finds this proffered rationale does not support discrediting Plaintiff.

In sum, the Court finds that ALJ Valentino erred by failing to identify specific statements he found unworthy of belief. The Court further finds that to the extent the ALJ did identify specific statements, he erred by failing to explain his decision to discredit Plaintiff's testimony with specific, clear and convincing reasons.[6] For these reasons, the Court **OVERRULES** the Commissioner's objection.

## II.    *Facts Not In Record And Opinion Evidence*

The Commissioner also objects to the R&R on the basis that Magistrate Judge Brooks assumed facts not found by the ALJ. (Doc. No. 31 at 2–4.) The Commissioner

---

[6] ALJ Valentino relied heavily on Dr. Vu's opinion evidence that concluded contrarily to Plaintiff's assertion of disability during the relevant time period. (AR 523–24.) It was not improper for the ALJ to consider testimony from physicians concerning the nature, severity, and effect of Plaintiff's condition. *Thomas*, 278 F.3d at 958–59. However, because the Court disagrees with the other reasons given to discredit Plaintiff, Dr. Vu's testimony alone is not clear and convincing evidence sufficient to support the ALJ's conclusion. *See Brown-Hunter*, 806 F.3d at 489 ("an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his [RFC] determination").

asserts the Magistrate Judge took the medical records submitted by Plaintiff in connection with his motion to augment the record as establishing as fact that Plaintiff underwent stenting subsequent to his November 2009 cardiac bypass surgery. (Doc. No. 31 at 4.) The Commissioner concludes this assumption affected the R&R's analysis of the opinion evidence. (*Id.*)

The Court disagrees. A careful reading of the R&R reveals that the records submitted by Plaintiff did not bear on Magistrate Judge Brooks's analysis as to the proper remedy. While the R&R notes "[t]he documents that are missing from the record go to whether a remand for further proceedings or an award of benefits is the proper remedy," the R&R also calls most of the attachments "duplicative" of documentation already included in the record. (Doc. No. 30 at 17.) On this basis, and because the Magistrate Judge concluded the ALJ erred in discrediting Plaintiff's and Dr. Sacamay's testimony and evidence, the Magistrate Judge denied Plaintiff's motion to augment the record as moot. (*Id.* at 18.)

The only other allusion to these records made in the R&R comes during Magistrate Judge Brooks's analysis of the proper remedy in light of the conclusion that ALJ Valentino erred in rejecting the treating physicians' evidence. (*See id.* at 37). However, contrary to the Commissioner's assertion, the Magistrate Judge did not conclude Dr. Vu's opinion testimony was wrong based on Plaintiff's submitted documentation. Rather, Magistrate Judge Brooks determined that as a nontreating, nonexamining physician, Dr. Vu's opinion testimony did not raise outstanding issues that must be resolved on remand under the Ninth Circuit's *Harman* test. (*Id.*) *See also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *infra* Discussion Section III.

To the extent the Commissioner objects to Magistrate Judge Brooks's conclusion that ALJ Valentino erred in the way in which he rejected Dr. Sacamay's evidence, the Court disagrees.[7] "Generally, the opinion of a treating physician must be given more weight

---

[7] The Commissioner does not explicitly state whether she objects to this portion of the R&R, but merely incorporates by reference portions of her cross motion for summary

than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); 20 C.F.R. § 404.1527(c). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir 1995)). In determining how much weight to afford to a treating physician's opinion, the ALJ must consider, among other things, the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole. 20 C.F.R. § 404.1527(c); *see Orn*, 495 F.3d at 631 (discussing factors an ALJ should consider in weighing opinion of treating physician). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13.

ALJ Valentino gave the following reasons for rejecting Dr. Sacamay's opinion: (1) her March 9, 2011, note stated only that Plaintiff has multiple problems and is unable and ineffective for employment; (2) Dr. Sacamay's Physical Residual Functional Capacity Questionnaire, completed the following day on March 10, 2011, did not relate back to any part of the relevant time period; (3) Dr. Sacamay's opinion is inconsistent with Dr. Vu's; and (4) no other medical opinion supports Dr. Sacamay's opinion that Plaintiff was limited to less than sedentary work during the relevant time period. (AR 524.)

Dr. Sacamay's note dated March 9, 2011, is short: "[Plaintiff] [h]as multiple medical

---

judgment that defend ALJ Valentino's rejection of Dr. Sacamay's opinion evidence. (Doc. No. 31 at 4 (citing Doc. No. 20-1 at 7–13.)

1  problems at this point. I believe [Plaintiff] would be unable and ineffective for
2  employment. Any assistance afforded to him would be much appreciated. Thank you." (AR
3  495.) Read in isolation, the ALJ is correct that Dr. Sacamay's opinion is entitled to less
4  weight for failing to provide "any supporting narrative statement," or to "state the treatment
5  provided" Plaintiff and why said treatment "has failed to control [his] symptoms." (AR
6  524.) However, the very next day, March 10, 2011, Dr. Sacamay-Bautista completed a
7  questionnaire that did exactly this. (AR 499–503.)

8  When viewed in this manner, the ALJ's stated reasons for giving Dr. Sacamay's
opinion less weight are related. If the ALJ concluded the March 10, 2011, questionnaire
related back to the time period at issue, then his analysis that Dr. Sacamay failed to a
provide supporting narrative statement and that no medical evidence supports her March
9, 2011, opinion would be undermined. But the ALJ did not conclude the questionnaire
related back. Rather, he found the questionnaire did not relate back to the relevant time
period at all. (AR 524.) Having reviewed the record *de novo*, the Court agrees with
Magistrate Judge Brooks that ALJ Valentino erred in so concluding.

"[R]eports containing observations made after the period for disability are relevant
to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)
(citing *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)). This is because "medical
reports are inevitably rendered retrospectively and should not be disregarded solely on that
basis." *Id.* (citing *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985)).

It was improper for the ALJ to refuse to consider Dr. Sacamay's March 10, 2011,
questionnaire wholesale. It is reasonable to infer that this questionnaire related to or
expounded upon the note she completed *one day prior*. *See Lingenfelter*, 504 F.3d at 1033
& n.3 (relying on *Smith* to consider medical reports made after the relevant time period);
*Butler v. Colvin*, No. 5:15-CV -02049 (VEB), 2016 WL 6602577, at *4, *6 (C.D. Cal. Nov.
7, 2016) (finding ALJ erred by failing to consider a post-hearing medical statement by
claimant's treating physician, even though the statement post-dated the date last insured by
*several years*, and remanding for further proceedings).

Furthermore, the Court cannot say that ALJ Valentino's failure to consider the questionnaire is harmless. In his prior order finding Plaintiff disabled from March 10, 2011, onward, the ALJ relied heavily on this very same questionnaire:

> [Plaintiff's] treating physician and primary care provider Elena Bautista-Sacamay, M.D. reported on March 10, 2011 that [Plaintiff] had uncontrolled diabetes, chronic renal failure, polyarthriticular gouty arthritis, coronary artery disease post bypass surgery in 2009, and a history of congestive heart failure, hypertension and hyperlipidemia. . . . [T]he undersigned assigns considerable weight to this opinion, as it is well-supported by the medical evidence, including the claimant's medical history and clinical and objective signs and findings as well as treatment notes, which provides a reasonable basis for claimant's chronic symptoms and resulting limitations. Moreover, this opinion is not inconsistent with the other substantial evidence of record. In addition, the physician is a treating source, who has seen [Plaintiff] on a regular basis and is best able to provide a detailed, longitudinal picture of [Plaintiff's] impairment and resulting limitations. The undersigned gives this opinion controlling weight.

(AR 680.) In light of these remarks, the Court cannot say the ALJ would have concluded "[t]here is [] no medical opinion in the record to support Dr. Sacamay's opinion of a less than sedentary RFC prior to March 10, 2011," had he considered the questionnaire. (AR 524.)

But the Court disagrees with the R&R that it can be determined at this time, in the first instance, that the questionnaire relates back to December 10, 2008, or the weight it should be given in light of Dr. Vu's contradictory opinion.[8] The questionnaire itself undermines this conclusion. In it, Dr. Sacamay writes that Plaintiff "had been seen in the clinic since January 6, 2011 up to the current time." (AR 499.) There is also evidence in the record that Dr. Sacamay treated Plaintiff since March 2010. (AR 409–10.) The ALJ must determine in the first instance the proper weight to afford Dr. Sacamay's questionnaire as well as the alleged onset date. *See infra* Discussion Section III.

---

[8] If, on remand, the ALJ still considers Dr. Vu's opinion controlling, the ALJ *must* provide "specific and legitimate reasons" supported by substantial evidence for rejecting Dr. Sacamay's evidence. *Lester*, 81 F.3d at 830.

15

For all these reasons, the Court **OVERRULES** the Commissioner's objection.[9]

## III.    Proper Remedy

The Commissioner lastly objects to the R&R on the basis that Magistrate Judge Brooks erroneously concludes a remand for benefits, as opposed to a remand for further proceedings, is the proper remedy. (Doc. No. 31 at 6–10.)

"A district court may 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing,' but 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler*, 775 F.3d at 1099). A district court may remand directly for an award of benefits only when the thee-part *Harman* test is met:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178. Only if the Court finds the first two steps met may the improperly rejected evidence by credited as true at the third step. *Dominguez*, 808 F.3d at 409; *Treichler*, 775 F.3d at 1105. However, even if these requirements are met, the Court retains "flexibility" to remand "on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the

---

[9] The Court also notes it was improper for the ALJ to reject out-of-hand Dr. Sacamay's March 9, 2011, note on the basis that "[o]pinions of disability or inability to work are [] issues for the Commissioner . . . ." (AR 524.) The ALJ was required to "consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "Although the ALJ is not bound by an expert medical opinion on the ultimate question of disability, []he must provide 'specific and legitimate' reasons for rejecting the opinion of a treating physician." *Id.* (quoting *Lester*, 81 F.3d at 830–31). Perhaps ALJ Valentino offered this reason for rejecting the March 9, 2011, note based on his perceived inability to consider the contemporaneously created questionnaire. If, however, the ALJ finds the March 9, 2011, entitled to little weight, he must provide specific and legitimate reasons for doing so.

meaning of the Social Security Act." *Dominguez*, 808 F.3d at 407–08 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)).

In concluding that remand for an immediate award of benefits is the proper remedy, Magistrate Judge Brooks credited as true Dr. Sacamay's opinion evidence at the second step. (Doc. No. 30 at 37.) This was erroneous. As the Ninth Circuit made clear in *Treichler* and reiterated in *Dominguez,* binding authority "requires [the Court] to assess whether there are outstanding issues requiring resolution *before* considering whether to hold that the claimant's testimony is credible as a matter of law." *Treicher*, 775 F.3d at 1105; *see also Dominguez*, 808 F.3d at 409 (applying *Treichler* to improperly rejected opinion evidence of treating physician).[10]

Applying the *Harman* test as required by *Treichler* and *Dominguez*, the Court concludes that the proper remedy is remand for further proceedings. As noted in the previous sections, the Court finds that the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony and for rejecting Dr. Sacamay's evidence. *See supra* Discussion Sections I–II. Accordingly, the first step of the *Harman* test is satisfied.

At the second step, the Court finds the record is replete with outstanding issues that preclude both crediting the improperly rejected testimony as true and remanding for an immediate award of benefits. For instance, there is the issue of whether subsequent stenting did in fact occur and such stenting's impact on Dr. Vu's opinion. There is also the issue of the proper weight Dr. Sacamay's questionnaire must be accorded in light of Dr. Vu's competing opinion—if his opinion remains unchanged on remand—and whose opinion

---

[10] Magistrate Judge Brooks relied on the Ninth Circuit's unpublished decision in *Trnavsky v. Colvin* for the proposition that it is appropriate to credit the rejected testimony as true for purposes of the second *and* third steps. 636 F. App'x 390, 391 (9th Cir. 2016) ("If the first element is met, the district court may credit the rejected evidence as true as a matter of law (the 'credit-as-true' doctrine) and analyze the next two elements of the *Harman* test under that assumption."); *see Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). While there is some support for the Magistrate Judge's approach, the Court is constrained to follow the recent, published decisions of the Ninth Circuit that explicitly state otherwise.

should control on the ultimate issue of Plaintiff's RFC. *See* 20 C.F.R. § 416.927(d)(2) (providing that the final responsibility for deciding RFC is reserved to the Commissioner). Consideration of the questionnaire also bears on the issue of the correct onset date, be it December 10, 2008, or sometime thereafter. *See supra* Discussion Section II; *see also Dominguez*, 808 F.3d at 409 ("When further proceedings are necessary to determine the onset date, it is appropriate to remand for those proceedings." (citing *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010))).

For these reasons, the Court **SUSTAINS** the Commissioner's objection and **REMANDS** this case to the ALJ for further proceedings consistent with this opinion.[11] The Court is cognizant that Plaintiff seeks benefits for a period of time several years in the past. However, invocation of the prophylactic credit-as-true rule would be improper in light of the outstanding issues. Accordingly, on remand, the ALJ must undertake his duty to fully develop the record in the areas of ambiguity identified in this opinion, most notably the issue of stenting that occurred subsequent to Plaintiff's November 2009 cardiac bypass surgery. The ALJ must also give proper consideration to Plaintiff's subjective pain testimony and Dr. Sacamay's March 10, 2011, questionnaire in light of the competing evidence in the record. The Court notes that consideration of the questionnaire and remand of this case do not have any impact on the benefits awarded to Plaintiff in the favorable decision he received on July 24, 2012, for the disability period commencing March 10, 2011.

---

[11] Because the Court concludes at the second *Harman* step that outstanding issues remain, the Court does not reach the third *Harman* step. *Dominguez*, 808 F.3d at 410 ("In light of the inconsistencies, conflicts, and gaps in the record that require further administrative proceedings, we do not proceed to the next question, whether the ALJ would be required to find Dominguez disabled if Dr. Bhakta's inconsistent reports were credited as true."); *Treichler*, 775 F.3d at 1107 ("Because further administrative proceedings are necessary, Treichler has failed to satisfy the second step of the *Varney* rule. Accordingly, we do not reach the third step of the rule, which arises where the record is fully developed and free from conflicts, making it clear that the ALJ would be required to find the claimant disabled if he credited the claimant's testimony as true.").

## CONCLUSION

For the reasons set forth above, the Court **OVERRULES IN PART AND SUSTAINS IN PART** the Commissioner's objections, (Doc. No. 31), and **ADOPTS IN PART** Magistrate Judge Brooks's report and recommendation, (Doc. No. 30). Plaintiff's motion for summary judgment, (Doc. Nos. 15, 18), is **GRANTED**, and the Commissioner's cross-motion for summary judgment, (Doc. No. 20), is **DENIED**. This case is **REMANDED** to the ALJ for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated:  February 3, 2017

Hon. Anthony J. Battaglia
United States District Judge